NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13798


ESTATE OF CAROLINE H. WALSH  vs.  COMMISSIONER OF REVENUE.



Suffolk.     December 3, 2025. – June 30, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
& Wolohojian, JJ.


Commissioner of Revenue.  Taxation, Commissioner of revenue,
Abatement, Estate tax, Interest and penalties, Appellate
Tax Board:  jurisdiction.  Constitutional Law, Taxation,
Excessive fines clause, Separation of powers, Trial by
jury.  Interest.  Penalty.  Jurisdiction, Appellate Tax
Board.  Statute, Construction.  Practice, Civil, Abatement,
Interest.



Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Michael Walsh (John H. Walsh also present) for the
taxpayer.
Grace Gohlke, Assistant Attorney General, for Commissioner
of Revenue.


BUDD, C.J.  The estate of Caroline H. Walsh (estate) filed

and paid its estate taxes nearly seven years late.  At that

time, it applied for an abatement seeking relief from interest

and penalties. The Commissioner of Revenue (commissioner) denied the request and assessed over $145,000 in interest on the $224,654 in taxes owed, as well as separate penalties for late filing and late payment, each equaling twenty-five percent of the amount due. The estate appealed to the Appellate Tax Board (board), which affirmed the commissioner's decision. On our own motion, we transferred the estate's appeal from the board's decision to this court, and now affirm.

Background. 1. Statutory overview. The Commonwealth imposes a progressive tax on the value of each estate passing from a decedent to one or more beneficiaries. See G. L. c. 65C, § 2. The executor of that estate must pay any estate taxes, and file an accompanying return, within nine months of the decedent's death. See G. L. c. 62C, §§ 17, 32 (a).

As with other tax obligations, the commissioner may, upon request, extend the time to file or pay monies owed. See G. L. c. 62C, § 19; G. L. c. 65C, § 10. However, estate taxes paid after the statutory deadline accrue interest at a rate set at four percentage points above the rate on Federal short-term debt.[1] See G. L. c. 62C, § 32 (a).

---

[1] See 26 U.S.C. §§ 6621(b)(3), 1274(d) (defining Federal short-term rate as average market yield of government bonds maturing in less than three years).

Absent an extension of time granted by the commissioner, estate tax returns that are not timely filed are subject to a penalty equaling one percent of the amount owed for each month (or fraction thereof) that the return is late, capped at twenty-five percent of the unpaid taxes.  See G. L. c. 62C, § 33 (a).  Late tax payments are subject to the same penalty.  See G. L. c. 62C, § 33 (b).  The tax code allows for the waiver or abatement of either of those penalties if the taxpayer can show that the delay was "due to reasonable cause and not due to willful neglect."  G. L. c. 62C, § 33 (f).  That abatement procedure is available for penalties but not for interest.  See id.  The denial of a request for relief from the payment of penalties may be appealed to the board.  See G. L. c. 62C, § 39.  See also G. L. c. 58A, § 1.  Rulings of the board are, in turn, subject to judicial review.  See G. L. c. 58A, § 13.

2.  Facts and prior proceedings.  We recite the facts as the board found them.  See G. L. c. 58A, § 13 ("The decision of the board shall be final as to findings of fact").  Caroline H. Walsh (decedent) died on January 28, 2012.  Her son, John H. Walsh, was appointed executor of her estate in July of that year.  As executor, Walsh was responsible for filing the Massachusetts estate tax return, Form M-706, due October 28, 2012.  Shortly after his appointment, Walsh contacted accountant Edward Sherman to handle the estate's returns.  Walsh and

Sherman had "a couple of initial meetings," but the return was not completed.  On July 7, 2013, Sherman died unexpectedly.

In December 2013, Walsh delivered the estate's financial information to another accountant, Carmine Mastrogiovanni.  The following month, Mastrogiovanni requested from Walsh certain documents needed to prepare the returns.  He later warned Walsh in a handwritten note:  "I have been waiting too long for this info and need everything A.S.A.P. or I will be forced to let it go until after the tax season 2015."  In February 2015, Walsh provided some, but not all, of the requested information.  In May 2015, Mastrogiovanni replied by letter with a list of eighteen additional items needed to complete the return.

In 2016, Mastrogiovanni retired and his partner, Heather Denehy, took over Walsh's account.  Denehy and Walsh were in contact every few months regarding information Denehy needed to complete the return.  In an e-mail message dated October 16, 2017, Denehy listed several outstanding items, many of which were identical to those sought by Mastrogiovanni in May 2015, including property valuations.  Walsh attributed his delay in providing these items to concerns about securing an accurate appraisal of the decedent's furnishings, explaining that he had been dissatisfied with earlier valuations.

Walsh sent an appraisal "meeting his standards" to Denehy in the latter part of 2018.  In October of that year, Denehy

sent Walsh a completed return that indicated the estate owed $224,654 in taxes and advised him to file it "as soon as possible." Walsh testified that he found some items in the return "problematic" and, nearly one year later, engaged a new accountant, Michael DiCorato.[2] DiCorato completed the return in October 2019, which reflected the same amount due as the one completed by Denehy. Walsh filed the return on October 9, 2019, nearly seven years after the statutory deadline, together with a check for $224,654 and an application for abatement seeking relief from all penalties and interest. No request for an extension was ever made.

On March 18, 2021, the commissioner issued a notice of assessment imposing $112,327.10 in statutory penalties and $145,674.60 in interest for the untimely filing of the estate tax return. On July 18, 2022, the commissioner denied the estate's request for an abatement.

On September 15, 2022, the estate filed a timely petition with the board challenging the denial. The board held a hearing during which Walsh explained the delays as a product of the unexpected death of the first accountant, Sherman; the alleged

---

[2] When asked during his testimony before the board to identify specific problems, Walsh provided no details.

procrastination of the second accountant, Mastrogiovanni; and the alleged incompetence of the third accountant, Denehy.

In its findings, the board noted that in the year between the time Walsh was named as executor and Sherman's death, no extension had been filed and Walsh admitted that "things just kind of fell by the wayside." The board further pointed to evidence of communications between Mastrogiovanni and Walsh in which the accountant expressed frustration that the requested documents and valuations had not been provided. Finally, the board discounted Walsh's criticism of Dennehy given that he identified no specific errors that she made and that the final tax figure on both the Denehy return and the one eventually filed were identical.[3] In short, the board rejected all of Walsh's claims and found that the estate failed to demonstrate reasonable cause for the delay in filing the return and paying the taxes originally owed and thus failed to justify an abatement of the penalties.

Discussion. In its appeal from the board's decision, the estate raises Federal and State constitutional claims as well as a statutory claim. It contends that (1) the combined interest

---

[3] As Walsh failed to provide evidence of an appraisal other than the one filed with the return, the board also discounted his claim that he was dissatisfied with an initial appraisal and was unable to secure an accurate one until 2018.

and penalties levied against it violate the excessive fines clauses of the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights; (2) the structure of the board violates the separation of powers under art. 30 of the Massachusetts Declaration of Rights; (3) it was denied a trial by jury in violation of the Seventh Amendment to the United States Constitution and art. 15 of the Massachusetts Declaration of Rights; and (4) the accrual of statutory interest is limited by G. L. c. 62C, § 33 (a) and (b), which cap the penalty amounts at twenty-five percent of the amount owed.[4]  Constitutional challenges and issues of statutory interpretation are questions of law that the court reviews de novo.  See Raftery v. State Bd. of Retirement, 496 Mass. 402, 407 (2025); Outfront Media LLC v. Assessors of Boston, 493 Mass. 811, 814 (2024).

---

[4] The estate also raises issues with certain of the board's rulings, and its decision to allow Denehy to testify, each of which we conclude lack merit.  First, contrary to the estate's claim, the board need not credit "uncontradicted testimony" regarding the reasons that the filing was delayed.  More specifically, the board did not err in determining that the estate failed to demonstrate that it "exercised the degree of care that an ordinary taxpayer in [its] position would have exercised."  Commissioner of Revenue v. Wells Yachts S., Inc., 406 Mass. 661, 665 (1990).  Nor did the board abuse its discretion in denying the estate's motion to strike the testimony of Denehy, where the commissioner complied with the appropriate procedures for issuing the subpoena.  See 831 Code Mass. Regs. § 1.24 (2007).

1.  Excessive fines.  Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed."  Similarly, under art. 26, "[n]o magistrate or court of law, shall . . . impose excessive fines."  The estate contends that both the interest and the penalties, separately and together, constitute excessive fines under the Federal and State Constitutions.

A monetary sanction is a "fine" in the constitutional sense if it is "punishment for an offense."  United States v. Bajakajian, 524 U.S. 321, 328 (1998).  A financial assessment is thus a fine unless it serves "solely a remedial purpose" (quotation and citation omitted).  Public Employee Retirement Admin. Comm'n v. Bettencourt, 474 Mass. 60, 71 (2016).  We consider each assessment in turn, continuing our practice in art. 26 cases of looking to the Eighth Amendment holdings of the United States Supreme Court for their persuasive value.  See Raftery, 496 Mass. at 408.

We begin with interest, which is typically understood to compensate a lender both for the credit risk of the borrower and for the value the lender would have received from holding the money instead.  See Todino v. Wellfleet, 448 Mass. 234, 239 (2007); Capital One Fin. Corp. v. Commissioner of Internal Revenue, 133 T.C. 136, 164 (2009), aff'd, 659 F.3d 316 (2011).  The interest rate assessed pursuant to G. L. c. 62C, § 32 (a),

is the Federal short-term rate plus four percentage points, which likely undercompensates the government for the risk of "lending" funds to taxpayers in default.[5]  Moreover, the interest payment is mandatory; it must be paid regardless of the taxpayer's culpability.  See G. L. c. 62C, §§ 32 (a), 33 (f).  We therefore conclude that the interest charged on unpaid taxes is solely remedial and accordingly is not a "fine" under either constitutional excessive fines clause.  See Bettencourt, 474 Mass. at 71.

As for the penalties separately assessed for late filing and late payment, we need not decide whether they are fines in the constitutional sense because, as discussed infra, even if they are, the amounts at issue are not excessive.[6]

---

[5] Generally, interest rates increase as the risk that a borrower will default increases.  The interest rate set here is only slightly higher than the prime interest rate, that is, the rate that commercial banks offer to their lowest-risk customers. Compare Board of Governors of the Federal Reserve System, 3-Month Treasury Bill Secondary Market Rate, Discount Basis [TB3MS], retrieved from Federal Reserve Economic Data, May 19, 2026 (approximately Federal short-term rate), with Board of Governors of the Federal Reserve System, Bank Prime Loan Rate [DPRIME], retrieved from Federal Reserve Economic Data, May 19, 2026 (prime rate, typically between three and four percentage points higher than Federal short-term rate).  Thus, the interest rate set by G. L. c. 62C, § 32 (a), on the "loan" of unpaid taxes is offered on terms similar to the terms of prime lending, but to a pool of substantially riskier borrowers:  individual taxpayers in default.

[6] The commissioner argues that because the penalties and interest are levied by the Legislature, they are not imposed by

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality:  The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Bettencourt, 474 Mass. at 72, quoting Bajakajian, 524 U.S. at 334.  A fine is unconstitutional if it is "grossly disproportional to the gravity of the [underlying] offense." Bettencourt, supra, quoting Bajakajian, supra at 337.  Thus, we consider whether the civil penalties at issue are grossly disproportional to the underlying civil infraction, assessing the nature and circumstances of the infraction as well as the harm it caused.[7]  Cf. Bettencourt, supra.  The estate has not

---

a "magistrate or court of law," and therefore do not fall into the art. 26 protections.  We do not agree with this interpretation of art. 26.

In the Declaration of Rights, the term "magistrate" is "used broadly to refer to members of each of the three branches of government," including members of the legislative and executive branches.  McDuffy v. Secretary of the Executive Office of Educ., 415 Mass. 545, 561 n.16 (1993).  Indeed, we previously have applied the art. 26 analysis to the mandatory, statutory forfeiture of pensions administered by the Public Employee Retirement Administration Commission and its subsidiary, the State Board of Retirement.  See, e.g., Raftery, 496 Mass. at 415; Bettencourt, 474 Mass. at 78-79.  Thus, the protections of art. 26 apply equally against the board.

[7] This court has used four factors, borrowed from the United States Supreme Court, to assess the proportionality between a fine and an offense:  "(1) the nature and circumstances of the offense; (2) whether the offense was related to other illegal conduct; (3) the maximum sentence that could have been imposed;

shown that the combined statutory penalties for late filing and late payment ($112,327.10) are "grossly disproportional" to its unlawful conduct (citation omitted).  Id. (party challenging constitutionality of monetary sanction bears burden of establishing it is excessive).

As discussed supra, the penalty schemes for both late filing and late payment assess one percent of the tax owed for each month (or portion thereof) that the tax remains unpaid, and are capped after twenty-five months.  See G. L. c. 62C, § 33 (a), (b).  At eighty-three months past the due date, the estate's tax return and payment were submitted well past the point at which the penalty was capped.  Moreover, the estate did not take advantage of available opportunities to avoid either or both of the penalties, such as requesting an extension and making an estimated tax payment.  See G. L. c. 62C, § 19.  Considering that flagrant conduct, the penalties appear relatively modest.

Because the estate has paid its taxes and will be required to pay interest to compensate for the delay in payment, see supra, the direct fiscal impact of the estate's conduct on the

---

and (4) the harm caused by the offense."  Raftery, 496 Mass. at 413-414, citing Bajakajian, 524 U.S. at 337-340.  Because the second and third factors apply only to penalties assessed in connection with criminal convictions, in this purely civil context we focus on the first and fourth factors.

Commonwealth is not necessarily a concern. However, "[t]o limit the creditable harm in this case only to the actual amount . . . obtained . . . would be to devalue the true gravity of the offense." Raftery, 496 Mass. at 420. Even in the absence of fraud or investigative costs in this case, the estate's egregious delays apparently arose from profound disregard for its obligations under the tax code, behavior that is part of a broader social problem that, in aggregate, costs the government substantial amounts of money and erodes faith in the fairness of the system. Cf. United States v. Toth, 33 F.4th 1, 17 (1st Cir. 2022), cert. denied, 143 S. Ct. 552 (2023) (failure to comply with disclosure requirements in tax code has cost government hundreds of millions of dollars).

Neither the penalty of twenty-five percent of the estate's tax liability for filing its return eighty-three months late, nor the separate twenty-five percent penalty for paying its taxes eighty-three months late is grossly disproportional to the underlying offense. Together, they are only one-half the value of the unjustifiably delayed tax payment. Accordingly, assuming without deciding that the tax penalties at issue are fines subject to art. 26 and the Eighth Amendment, they are not excessive, either together or separately.

2. Separation of powers. The estate also argues that the board's adjudication of the appeal was a violation of the

separation of powers requirement of art. 30. General Laws c. 58A, § 6, confers the board's jurisdiction to adjudicate appeals arising from the denial of an abatement.[8] We therefore construe the estate's argument as a facial challenge to that statute, and begin with the presumption that the statute is constitutional. See Atwater v. Commissioner of Educ., 460 Mass. 844, 853 (2011).

Article 30's protection of the separation of powers prohibits "interference with the judiciary's core functions." Ellis v. Department of Indus. Accs., 463 Mass. 541, 548 (2012), quoting First Justice of the Bristol Div. of the Juvenile Court Dep't v. Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't, 438 Mass. 387, 396 (2003).

Here, because the decisions of the board can be appealed to the Appeals Court, the judiciary maintains the power to review and adjudicate disputes over application of the tax laws. See G. L. c. 58A, § 13. There is therefore "meaningful judicial review such that there is no art. 30 violation." Atwater, 460 Mass. at 857. See Opinion of the Justices, 375 Mass. 795, 819 (1978) (proposed ethics commission's power to find violations

---

[8] In particular, G. L. c. 58A, § 6, confers "jurisdiction to decide appeals under the provisions of . . . section[] 39 . . . of chapter 62C," which, in turn, authorizes an appeal by "[a]ny person aggrieved by the refusal of the commissioner to abate or to refund any tax, in whole or in part," G. L. c. 62C, § 39.

and impose civil penalties did not violate art. 30 because such determinations "would be subject to judicial review so that [the commission] would not improperly be exercising powers committed to the judicial department").[9]

3. Jury trial. The estate further argues that under art. 15, the board may not adjudicate its claim for a tax abatement without fact finding by a jury.[10] We disagree.

Article 15 requires that "[i]n all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury." We have held that civil administrative proceedings involving the Commonwealth are not suits between persons. See Zora v. State Ethics Comm'n, 415 Mass. 640, 652 (1993). We have further held that the mere potential for monetary relief does not make an essentially equitable proceeding one "concerning property" under

---

[9] We note that this case does not involve an agency improperly exercising powers exclusively vested in the judicial branch. See Ellis, 463 Mass. at 549-550 (art. 30 violation found despite judicial review of executive agency's imposition of professional discipline on attorneys, where such authority rests exclusively with judiciary). No such exclusive power is at issue in this case.

[10] The estate also cites to the Seventh Amendment, an argument we decline to consider because the Seventh Amendment has not been incorporated against the States. See McDonald v. Chicago, 561 U.S. 742, 765 n.13 (2010).

art. 15.  See <u>Stonehill College</u> v. <u>Massachusetts Comm'n Against Discrimination</u>, 441 Mass. 549, 568, cert. denied sub nom. <u>Wilfert Bros. Realty Co.</u> v. <u>Massachusetts Comm'n Against Discrimination</u>, 543 U.S. 979 (2004).  Instead, we have interpreted the art. 15 right to a jury trial to apply only to those cases that were entitled to trial by jury at common law. See <u>Zora</u>, <u>supra</u>.  That is, if a cause of action did not exist in 1780, a trial by jury is not required by art. 15.  See <u>Department of Revenue</u> v. <u>Jarvenpaa</u>, 404 Mass. 177, 188-189 (1989).

Here, the estate brings a claim for an abatement from a tax penalty.  The opportunity to abate inheritance taxes arose well over a century after the ratification of the Declaration of Rights.  See St. 1891, c. 425 (establishing inheritance tax); St. 1907, c. 563, § 20 (establishing abatement procedure for inheritance tax).  Moreover, to the extent that similar claims may have existed in 1780, those claims would have been brought in equity, see St. 1907, c. 563, § 20, and therefore would not have been entitled to trial by jury.  See <u>Parker</u> v. <u>Simpson</u>, 180 Mass. 334, 355 (1902) (no right to jury trial for claim brought in equity).  Indeed, similar equitable claims, like petitions for writs of mandamus, were not entitled to trial by jury in

1780.[11]  See <u>Donaldson</u> v. <u>Boston Herald-Traveler Corp</u>., 347 Mass.

274, 278 (1964) ("A petition for mandamus was not triable to a

jury when our Constitution was adopted" [citation omitted]).

The estate is thus not entitled to a jury trial on its claim for

an abatement.  See <u>Jarvenpaa</u>, 404 Mass. at 188-189.

        4.  <u>Cap on interest</u>.  Finally, the estate contends that the

combined amount of interest and penalties assessed on its unpaid

taxes is subject to the twenty-five percent cap on penalties.

As a result, the estate argues, the commissioner erred in

assessing interest and penalties that, combined, exceed that

cap.

> General Laws c. 62C, § 32 (<u>c</u>), states in pertinent part:
>
> "A penalty assessed under [§ 33 (<u>a</u>)] of this chapter shall
> include interest as provided in paragraph (<u>a</u>) of this
> section from the statutory due date including extensions to
> the date of payment of such penalty.  A penalty assessed
> under [§ 33 (<u>b</u>) or (<u>c</u>)] shall include interest as provided
> in paragraph (<u>a</u>) of this section from a date thirty-one
> days after the date of the notice of assessment to the date
> of payment of such penalty."

The estate argues that the words "shall include" in the above

paragraph "indicate that interest is part of the penalty" and is

therefore subject to the cap.  We agree with the board that the

---

        [11] We additionally note that because the abatement the
estate seeks is discretionary, construed as a petition for
mandamus, it would fail as a matter of law.  See <u>Hayes</u> v.
<u>Hurley</u>, 292 Mass. 109, 113 (1935) ("It is familiar law that the
writ of mandamus does not issue to compel a particular decision
which rests in the discretion of the respondent").

statute, by its plain language, does not limit the accrual of interest.

General Laws c. 62C, § 32 (c), incorporates by reference the accrual of interest under § 32 (a), which does not indicate that there are any exceptions or limitations on that accrual.[12] Had the Legislature intended that the caps encompass interest as well as penalties, it presumably would have indicated as much in the subsection describing how interest accrues.  The board's statutory interpretation is therefore reasonable.  See Outfront Media LLC, 493 Mass. at 815 ("Although we review questions of law de novo, because the board is an agency charged with administering the tax law and has expertise in tax matters, we give weight to its interpretation of tax statutes, and will affirm its statutory interpretation if that interpretation is reasonable" [citation omitted]).

Conclusion.  For the reasons explained supra, the decision of the board is affirmed.

So ordered.

---

[12] General Laws c. 62C, § 32 (a), states in relevant part:

"If any amount of tax is not paid to the commissioner on or before its statutory due date, there shall be added to the tax interest at the rate of the Federal short-term rate determined under [§] 6621(b) of the Internal Revenue Code, as amended and in effect for the taxable year, plus four percentage points, compounded daily."